1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LINKS: 69, 70**

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KNORR-NAEHRMITTEL AKTIENGESELLCHAFT and UNILEVER N.V. | ) ) ) |
| Plaintiff , | ) ) |
| v. | ) ) ) |
| KNORR SOLUTIONS. INC.. SIU C. CHANN a/k/a ALFRED CHAN. SIU WAI FUNG a/k/a CALVIN FUNG and PING HONG LI a/k/a SUKIE LI | ) ) ) ) ) |
| | ) ) |
| Defendant. | ) ) ) |

**Case No. CV 10-08155 GAF (RZx)**

MEMORANDUM & ORDER REGARDING MOTION FOR DEFAULT JUDGMENT

## I.

## INTRODUCTION

Plaintiffs Knorr-Naehrmittel Aktiengesellchaft ("Knorr") and Unilever N.V.

("Unilever") seek entry of default judgment pursuant to Federal Rule of Civil Procedure

55(b)(2) against Defendant Ping Hong Li a/k/a Sukie Li ("Li"), in this action alleging

that Defendants Knorr Solution, Inc. ("Knorr Solution"), Siu C. Chan a/k/a Alfred Chan

("Chan"), Siu Wai Fung a/k/a Calvin Fung ("Fung"), and Li have used Plaintiffs'

registered trademarks to offer for sale counterfeit products and have used an imitation of

Plaintiffs' registered trademarks in violation of § 32(1) of the Lanham Act, 15 U.S.C. §

1114(1) (trademark counterfeiting and infringement), § 43(a)(1) of the Lanham Act, 15

U.S.C. § 1125(a)(1) (false designation of origin, false description, and false advertising), and § 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1) (trademark dilution); California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code sections 17200 et seq.; and Cal. Bus. & Prof. Code section 14247 (trademark dilution); and have also thereby engaged in common law unfair competition.  (Docket No. 1 [Compl.].)  Plaintiffs seek the entry of a judgment finding Li liable on all claims and permanently enjoining Li from (1) using or authorizing third parties to use Plaintiffs' trademarks; (2) imitating or authorizing third parties to imitate Plaintiffs' trademarks; (3) making representations that are likely to lead the public to believe that Li's products are associated with Plaintiffs' products; (4) diluting Plaintiffs' trademarks in any way; (5) engaging in any other type of unfair competition or infringement of Plaintiffs' trademarks; (6) registering or applying to register for trademarks incorporating Plaintiffs' trademarks; and (7) aiding other parties in doing the above acts.  (Docket No. 69 [Not. of Motion], Ex. 1 [Proposed Order].)

After examining Plaintiffs' relevant filings, the Court concludes that Plaintiffs are entitled to default judgment because they have satisfied all of the relevant procedural requirements, have pleaded sufficient facts in their Complaint to justify entry of default judgment, seek remedies that the Court deems proper, and have shown that they are entitled to relief.  Accordingly, Plaintiffs' motion for default judgment is **GRANTED**.  The Court explains its reasoning in greater detail below.

## II.

## BACKGROUND

The following facts are those alleged in Plaintiffs' Complaint.  Plaintiff Knorr is a member of Plaintiff Unilever's group of companies.  Together, Plaintiffs manufacture, advertise, and distribute food and beverage products around the world under a number of trademarked and well-known brands, including KNORR (the "Knorr Mark") and UNILEVER FOODSOLUTIONS (the "Unilever Mark").  (Compl. ¶¶ 17–18, 33.) Plaintiffs have sold food products under the Knorr Mark and its distinctive green,

2

yellow, red, and white color scheme consistently since 1885, and have expended substantial time, money, and other resources advertising, promoting, marketing, and developing the Knorr Mark and the food products sold thereunder.  (Id. ¶¶ 18–19, 22–32.)  As a result, the Knorr Mark qualifies as "famous," as that term is used in 15 U.S.C. § 1125(c)(1), and has achieved a secondary meaning to the consuming public as an identifier of high quality food products sponsored and approved by Plaintiffs.  (Id. ¶¶ 31, 97.)

Plaintiffs similarly use the Unilever Mark, which also bears the distinctive green, yellow, red, and white color scheme, to market and distribute various food products throughout the United States, and have done so since prior to Li's use of the infringing material.  (Id. ¶¶ 33–36, 42.)  Plaintiffs have also expended significant time, effort, and money marketing and developing the Unilever Mark and the quality of the products sold thereunder; this mark also qualifies as "famous," as that term is used in 15 U.S.C. § 1125(c)(1).  (Id. ¶ 37–42.)

Defendants own and operate a business under the names Knorr Solution, Inc. and Knorr Food Solution, which imports, distributes, and sells food products throughout the United States.  (Id. ¶ 43.)  Defendants Chan and Fung are alleged to be, respectively, the Chief Executive Officer of Knorr Solution and the owner and registered agent of Knorr Food Solution.  (Id. ¶¶ 44–45.)  Defendant Li directs, exercises control over, ratifies, and participates in Knorr Solution's activities and operations, and is "a moving, active, conscious force behind the infringing activity of defendant Knorr Solution in California."  (Id. ¶ 46.)  Plaintiffs assert that Li uses a nearly identical version of the Knorr Mark on business cards, invoices, and other material without authorization from Plaintiffs for the purpose of representing to the public that Knorr Solution is the exclusive distributor of Plaintiffs' products in the United States.  (Id. ¶¶ 47–49.)  Plaintiffs further states that Li, directly and through her agents, imports and markets, distributes, and sells unauthorized food products from East Asia, including counterfeit and gray market products not intended for distribution in the United States.  (Id. ¶¶

50–51.)  Li and her agents have also deliberately altered the expiration dates on these counterfeit products.  (Id. ¶ 52.)  Li participated in the registration of Knorr Solution, Inc. and Knorr Food Solution as fictitious trade names with the California Secretary of State in May of 2009.  (Id. ¶ 59.)  In January of 2010, Defendant Knorr Solution filed a trademark application, seeking to register "Knorr Food Solution" as a trademark, along with a declaration stating that, to the best of its knowledge and belief, no other person or entity had a right to use the mark or any semblance thereof in commerce.  (Id. ¶¶ 60, 73–74, Ex. 4.)  This application was refused on the basis of likelihood of confusion with the Knorr Mark.  (Id. ¶ 60.)  Li's use of Plaintiffs' trademarks is with knowledge of Plaintiffs' ownership, including their exclusive right to use and license the marks and their associated goodwill, and is without Plaintiffs' consent or authorization.  (Id. ¶¶ 57–68.)

Plaintiffs filed their Complaint in this action on October 28, 2010.  Defendants Chan and Knorr Solution answered on December 2, 2010.  (Docket No. 12.)  Defendant Li was personally served on November 10, 2010, and Defendant Fung was personally served on November 11, 2010.  (Docket Nos. 14, 15.)  When Defendants Fung and Li failed to reply, Plaintiffs requested Entry of Default against them on January 31, 2011, and again on February 7, 2011, and Default was entered against these Defendants by the Court Clerk on February 8.  (Docket Nos. 20, 21, 27, 28, 29.)  However, on April 8, 2011, the Court granted a motion to set aside the Default as to Defendant Fung and accepted Fung's Answer for filing.  (Docket Nos. 30, 33, 34.)  Defendant Li has yet to appear in the instant dispute, and Plaintiffs filed the present application for default judgment on February 6, 2012.  (Docket Nos. 69, 70.)

**III.**

**DISCUSSION**

**A. PROCEDURAL REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT**

Rule 55(b) of the Federal Rules of Civil Procedure permits a court-ordered default judgment following the entry of default by the Court Clerk under Rule 55(a).

4

<u>Elektra Entm't Grp., Inc. v. Bryant</u>, No. 03-6381 GAF (JTLx), 2004 WL 783123, at *1 (C.D. Cal. Feb. 13, 2004) (citing <u>Kloepping v. Fireman's Fund</u>, No. C 94-2684 THE, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996)).  Local Rule 55-1 requires that the following information be set forth: (1) when and against what party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Civil Relief Act,[1] 50 App. U.S.C. § 521, does not apply; and (5) that notice of the motion has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2).  C.D. Cal. R. 55-1.

Here, Plaintiffs have satisfied all applicable procedural requirements.  Plaintiffs' application and supporting declaration indicates that the Court Clerk entered default against Li as to the Complaint on February 8, 2011.  (Docket No. 69 [App.] at 2; Docket No. 72 [Gulia Decl.] ¶¶ 2–3; <u>see also</u> Docket No. 29.)  Plaintiffs have also established that Defendant is not an infant, incompetent person, or subject to the Servicemembers Civil Relief Act.  (App. at 2; Gulia Decl. ¶¶ 4–5.)  Finally, Plaintiffs served notice of the present application on Defendant Li.  (App. at 2; Gulia Decl. ¶ 6.)  Because the procedural requirements for entry of default judgment are met, the Court proceeds to weigh the merits of Plaintiffs' motion.

**B.  FACTORS USED TO DETERMINE WHETHER TO GRANT DEFAULT JUDGMENTS**

A district court has discretion to grant or deny a motion for default judgment.  <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980).  Thus, a defendant's default alone does not entitle a plaintiff to a court-ordered judgment.  The Ninth Circuit has held that a district court must examine the following factors when determining whether to enter a default judgment:

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of

---

[1] The Servicemembers Civil Relief Act was formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940.

money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted).  "In applying this discretionary standard, default judgments are more often granted than denied."  PepsiCo, Inc. v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D. Cal. 1999).

On a motion for default judgment, a court must presume the truth of all factual allegations in the complaint except for those pertaining to the amount of damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987).  Along with the complaint, the court may look to affidavits and declarations to determine whether default judgment is appropriate.  See William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial § 6:91 (2010).

## 1. POSSIBILITY OF PREJUDICE TO PLAINTIFF

To satisfy the first Eitel factor, Plaintiffs must show that they will face prejudice if the Court does not enter default judgment.  Eitel, 782 F.2d at 1471–72.  The Court borrows the standard of prejudice employed by courts when evaluating motions to set aside entry of default judgment—namely, whether a plaintiff's ability to pursue its claims will be hindered if the application for default judgment is not granted.  See TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 701 (9th Cir. 2001).  In other words, Plaintiffs must show more than mere delay resulting from a denial of their application; they must establish that they will suffer "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion" if the application is denied.  Thompson v. Am. Home Assur. Co., 95 F.3d 429, 433–34 (6th Cir. 1996).  Additionally, courts have held that prejudice is shown where a plaintiff has no "other recourse for recovery" against the defendant.  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The Court concludes that Plaintiffs would suffer significant prejudice if the Court were to deny their motion.  Notably, Plaintiffs will be left without other recourse for recovery against Li.  See id.  If default judgment were not entered, Plaintiffs would have no way to protect their marks from Li or to prevent future monetary damage and harm to their reputation by way of Li's unauthorized use of their marks to sell counterfeit goods.  Li would effectively be permitted to continue infringing on Plaintiffs' federally registered marks without liability or consequence.  Because Plaintiffs would suffer substantial prejudice if default judgment were not entered, the first Eitel factor weighs in favor of granting default judgment.

**2.  SUBSTANTIVE MERITS AND SUFFICIENCY OF THE COMPLAINT**

The second and third Eitel factors have been interpreted by courts to require a plaintiff to state a claim upon which he or she may recover.  Id. at 1175.  This means simply that the Court must examine the Complaint to determine whether Plaintiffs have adequately pleaded their claims.

Plaintiffs assert claims for violations of (1) § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (trademark counterfeiting and infringement); (2) § 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1) (false designation of origin, false description, and false advertising); (3) § 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1) (trademark dilution); (4) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code sections 17200 et seq; (5) Cal. Bus. & Prof. Code section 14247 (trademark dilution); and (6) common law unfair competition.  The Court addresses each claim below.

### a.  Trademark Infringement and Unfair Competition

Claims of trademark infringement under 15 U.S.C. § 1114, false designation of origin, false description, and false advertising under 15 U.S.C. § 1125(a), and unfair competition under California's UCL and common law "are subject to the same test." Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir. 2008); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988).  To prevail on a these claims, a plaintiff must show that (1) it owns a valid, protectable mark; (2) defendant

7

used the mark without consent; and (3) use of the mark is likely to cause confusion.  15 U.S.C. § 1114(1)(a); Century 21 Real Estate Corp., 846 F.2d at 1178.

Plaintiffs allege that they own the following valid trademarks registered on the Principal Register of the United States Patent and Trademark Office: 1,766,039; 685,624; 3,627,357; 3,669,613; 2,941,509; 3,757,732; 3,449,676; 3,163,711; 3,641,169; and 3,647,941.  (Compl. ¶¶ 19, 33.)  The registrations for 1,766,039 and 685,624 are incontestable, which is conclusive evidence of their validity.  (Id. ¶ 20); see 15 U.S.C. § 1115(b).  As to the remaining marks, the registration constitutes prima facie evidence of "the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services."  15 U.S.C. § 1115(a).  The presumption in favor of Plaintiffs' ownership of the marks has not been rebutted; thus, Plaintiffs' ownership is established on the basis of the federal registrations.  Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1047 (9th Cir. 1999); Sengoku Works Ltd. v. RMC Intern., Ltd., 96 F.3d 1217, 1219–20 (9th Cir. 1996).  As to the second element, Plaintiffs allege that Li used some or all of these marks without Plaintiffs' consent.  (Compl. ¶¶ 43, 46–52.)

Plaintiffs also adequately allege likelihood of confusion.  "The critical determination is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product."  Jada Toys, Inc., 518 F.3d at 632 (citing Brother Records, Inc. v. Jardine, 318 F.3d 900, 908 (9th Cir. 2003) (quotations omitted)).  The Ninth Circuit employs an eight factor test in determining the likelihood of confusion.  "These factors include: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines."  Jada Toys, Inc., 518 F.3d at 632 (citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979)).

8

The first factor—strength of the allegedly infringed mark—weighs in favor of Plaintiffs.  "The more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws."  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir. 2000).  Plaintiffs have been using the Knorr Mark on product packaging and promotional and advertising material sold throughout the United States continuously since 1885.  (Compl. ¶¶ 18–19, 21–22.)  Plaintiffs have expended considerable time and effort in advertising, promoting, marketing, and developing the Knorr Mark, and the Knorr brand has therefore gained a national reputation for selling high quality food products.  (Id. ¶¶ 24–32.)  Indeed, the Knorr Mark has "acquired and maintained outstanding celebrity and fame among the consuming public—symbolizing the substantial and material goodwill that Knorr. . . [has] created and fostered for the Knorr Mark throughout the United States."  (Id. ¶ 31.)  Similarly, the Unilever Mark has been used continuously in interstate commerce throughout the United States since before the infringement began, and Plaintiffs have expended considerable time, effort, and money in marketing and developing the Unilever Mark.  (Id. ¶¶ 35, 37–39.)  Accordingly, the Unilever Mark has acquired and maintained "enormous value and secondary meaning in the United States," as well as "outstanding celebrity and fame."  (Id. ¶¶ 40–41.)

The second factor—proximity, or relatedness, of the goods—also favors Plaintiffs.  Like Plaintiffs, Li marketed and sold food products in the United States.  (Id. ¶¶ 43, 46.)  The goods sold and marketed by Li are virtually identical to those marketed and sold by Plaintiffs.  (Id. ¶¶ 48–52, Exs. 3–4.)

The third factor—similarity of the marks—also favors Plaintiffs.  "Similarity of the marks is tested on three levels: sight, sound, and meaning."  Sleekcraft, 599 F.2d at 351.  The infringing marks incorporate the Knorr mark in its entirety, and incorporate a portion of the Unilever FoodSolutions mark; the marks are thus similar in sight and, if read aloud, also in sound.  (Id. ¶¶ 43, 46, 50–52, Exs. 3–4.)  Further, Li used the marks to sell the same

products as those sold by Plaintiffs, which would lead consumers to deduce that Plaintiffs' and Li's marks had similar meanings.

The fourth factor—evidence of actual confusion—modestly favors Li, but only because Plaintiffs have presented no specific allegations of actual consumer confusion. However, given the similarity of the marks and their use on identical products, it would not be a stretch to infer the existence of actual confusion.

The fifth factor—marketing channels used—favors Plaintiffs.  Plaintiffs offer their products for sale in interstate commerce through a variety of channels, including supermarkets, grocery stores, convenience stores, and online retailers, and they employ a variety of media outlets to advertise their products, including nationally circulated print publications, television commercials, and internet advertising campaigns.  (Id. ¶¶ 18, 21, 27–28, 36, 38–39.)  Defendants, including Li, also distribute and sell food products through the channels of interstate commerce, and they employ internet advertising to promote their products.  (Id. ¶¶ 46, 51, 65, Exs. 3, 5.)  Thus, the marketing channels used by Defendants overlap with those used by Plaintiffs.

The sixth factor—type of goods and degree of care exercised by the purchaser—also favors Plaintiffs here.  The Complaint states that Li sells counterfeit food products bearing marks nearly identical to the Knorr and Unilever Marks.  (Id. ¶¶ 43, 46, Ex. 3.)  There is no reason to think that buyers of such a common consumer good as food products exercise a higher degree of care—even if the non-counterfeit good sells for a higher price.  See K-Swiss, Inc. v. USA AISIQI Soes Inc., 291 F. Supp. 2d 1116, 1124 (C.D. Cal. 2003) (finding that consumers were not likely to "exercise a high degree of care" when buying a "common consumer item," and reasoning that the lower price of the infringing good might make "purchasers . . . assume that [the infringing] shoes are low-end lines produced by [the mark holder]").

The seventh factor—defendant's intent in selecting the mark—also weighs in favor of Plaintiffs.  "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that

is, that the public will be deceived."  Sleekcraft, 599 F.2d at 354.  Plaintiffs allege that Li used the infringing marks on counterfeit goods, with knowledge that the marks belonged to Plaintiffs and that the goods distributed were counterfeit, and that Li continued to use the marks after receiving Plaintiffs' cease and desist letter.  (Compl. ¶¶ 56–62, 65.)  These allegations are sufficient to establish Li's intent to deceive.

The final factor—likelihood of expansion of the product lines—does not apply here, because the Parties offer the same products.  Where the goods offered by a mark-holder and alleged infringer "are already related, . . . this factor is irrelevant."  Playboy Enters., Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020, 1029 (9th Cir. 2004).

In light of the foregoing, the Court finds that Plaintiffs have sufficiently established a likelihood of confusion.  Accordingly, Plaintiffs have adequately pleaded claims against Li under 15 U.S.C. §§ 1114 and 1125, and for statutory and common law unfair competition in violation of California law.

### b.  Trademark Dilution under Federal and California Law

Next, Plaintiffs assert claims for trademark dilution under 15 U.S.C. §1125(c)(1) and Cal. Bus. & Prof. Code section 14247.  A trademark dilution plaintiff must establish that (1) its trademark is famous, (2) the defendant is making commercial use of the trademark, (3) the defendant's use began after the trademark became famous, and (4) the defendant's use dilutes the quality of the trademark by diminishing the trademark's capacity to identify and distinguish goods.  Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1324 (9th Cir. 1998) (citing 15 U.S.C. § 1125(c) and California's prior anti-dilution statute, Cal. Bus. & Prof. Code section 14330).

As discussed above, Plaintiffs have extensively advertised, promoted, and marketed goods under the Knorr and Unilever Marks, and these marks enjoy celebrity as a result of their continuous use in interstate commerce.  (Compl. ¶¶ 18, 29, 31, 36, 40–41.)  Accordingly, Plaintiffs have sufficiently alleged that the Knorr and Unilever Marks are famous.  Plaintiffs have also established that Li has used the infringing mark in commerce.  (Id. ¶¶ 43, 46.)  Finally, Plaintiffs have asserted that Li infringed upon

11

the marks after they became famous, and that their use dilutes the distinctive quality of the marks.  (Id. ¶¶ 18, 35, 58, 68–72, 100.)  Accordingly, Plaintiffs have stated a claim for trademark dilution under federal and California law.

### 3.  AMOUNT AT STAKE

The fourth Eitel factor requires the court to consider the amount of money at stake.  Eitel, 782 F.2d at 1471–72.  The Court must evaluate the amount at stake because default judgments are disfavored where the amount at stake "is too large or unreasonable in light of [the] defendant's actions."  Truong Giang Corp. v. Twinstar Tea Corp., No. 06-03594, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Although Plaintiffs' Complaint sought monetary damages, Plaintiffs presently seek only an injunction against Defendant Li.  (See Compl. at 26–27; see Docket No. 71 [Mem.] at 6–8; Docket No. 87 [Suppl. Mem.] at 7–8.)  Accordingly, the fourth Eitel factor weighs in favor of entering default judgment.

### 4.  POSSIBILITY OF DISPUTE

The fifth Eitel factor requires the Court to consider the possibility of disputes regarding material facts in the case.  Eitel, 782 F.2d at 1471–72.  As explained above, upon entry of default, a court must presume the truth of all well-pleaded facts in the complaint except those relating to damages.  TeleVideo, 826 F.2d at 917–18.

Here, Plaintiffs' Complaint, which the Court takes as true, alleges sufficient facts to establish Plaintiffs' claim for relief.  By failing to respond, Li has failed to rebut the presumption that Plaintiffs' allegations are true.  Thus, no genuine dispute exists, or is likely to exist, regarding the material facts at issue in this case.  This Eitel factor therefore favors entering default judgment.

### 5.  POSSIBILITY OF EXCUSABLE NEGLECT

In considering the sixth Eitel factor, the Court must account for the possibility that the defendant's default resulted from excusable neglect.  Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action, and that they be afforded an opportunity to present their

12

objections before a final judgment is rendered.  <u>Mullane v. Cent. Hanover Bank & Trust</u> <u>Co.</u>, 339 U.S. 306, 314 (1950).

Plaintiffs personally served Li with a copy of the Summons and Complaint at Li's known address on November 10, 2012, pursuant to Federal Rules of Civil Procedure 4(c) and 4(e)(2).  (Gulia Decl. ¶ 2; <u>see</u> Docket No. 15.)  Accordingly, the Court is satisfied that Li has been effectively served.  Moreover, Plaintiffs have filed a declaration stating that Li is aware of this case and has communicated with Plaintiffs' counsel regarding it.  (Docket No. 84 [Chang Decl.] ¶ 4.)  Li has had ample time to resolve this matter by filing motions or interposing an answer, but has done nothing. The Court thus concludes that Li's default was the result of an affirmative decision not to litigate the action rather than excusable neglect.  The sixth <u>Eitel</u> factor therefore favors entering default judgment.

### 6. POLICY FAVORING DECISIONS ON THE MERITS

The seventh <u>Eitel</u> factor requires the Court to account for the policy favoring decisions on the merits.  <u>Eitel</u>, 782 F.2d at 1471–72.  The very existence of Rule 55(b), however, indicates that "this preference, standing alone, is not dispositive."  <u>PepsiCo</u>, 238 F. Supp. 2d at 1177 (internal quotation marks omitted) (quoting <u>Kloepping</u>, 1996 WL 75314, at *3).  Rule 55(a) permits a district court to render a judgment before adjudicating the merits of the case where the defendant fails to defend against the action. Fed. R. Civ. P. 55(a); <u>see also</u> Schwarzer, <u>supra</u>, § 6:102, at 6-26.

Here, Li's failure to answer the Complaint or otherwise respond in this matter renders the Court unable to adjudicate the case on the merits.  Accordingly, the policy of deciding cases on the merits does not preclude the entry of default judgment.

### 7. CONCLUSION RE: EITEL FACTORS

After analyzing each <u>Eitel</u> factor, the Court concludes that, on balance, the factors weigh in favor of entering default judgment against Defendant Li.  Accordingly, Plaintiffs' Motion for Entry of Default Judgment is **GRANTED**.

13

**C. REMEDIES**

The Court proceeds to assess whether Plaintiffs are entitled to the remedies they seek.  Under Federal Rule of Civil Procedure 54(c), remedies granted in a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Under Federal Rule of Civil Procedure 8(a)(3), a plaintiff's demand for relief must be specific.  Fed. R. Civ. P. 8(a)(3); see also  Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 923 (C.D. Cal. 2010).  In addition, a plaintiff must "prove up" the amount of damages claimed.  Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 501 (C.D. Cal. 2003).  These rules limit the scope of relief and ensure fundamental fairness as required by due process of law.  Schwarzer, supra, § 6:131, at 6-33.

Here, Plaintiffs request only injunctive relief against Defendant Li.  The relief requested is sufficiently specific, and does not differ in kind from the relief prayed for in Plaintiffs' Complaint, in compliance with Rules 8(a)(3) and 54(c).  (See Compl. at 23–25; Proposed Order at 2–4.)  Plaintiffs seek permanent injunctive relief under the Lanham Act, 15 U.S.C. §§ 1116(a) and 1125(c)(1).  (See Mem. at 6; Suppl. Mem. at 10.)  The Lanham Act expressly permits district courts to issue injunctions "to prevent the violation of any right of the registrant of a [registered] mark . . . or to prevent a violation under [§ 1125(a), (c), or (d)]."  15 U.S.C. § 1116(a).  To obtain permanent injunctive relief, a plaintiff must prove that (1) it has suffered irreparable injury; (2) remedies at law are inadequate; (3) the balance of hardships favors granting injunctive relief; and (4) the public interest would not be disserved by a permanent injunction.  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  Based on the allegations in Plaintiffs' Complaint, the Court concludes that all four requirements are satisfied and that Plaintiffs are entitled to injunctive relief.

Although it is no longer presumed in the Ninth Circuit that trademark infringement causes irreparable harm, see Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 998 (9th Cir. 2011), here, Li's use of the Knorr and Unilever Marks

is highly likely to confuse consumers and to diminish Plaintiffs' goodwill.  (See Compl. ¶¶ 46–49, 51–52, 54–57, 65–66, 71–72; Mem. at 6–7; Suppl. Mem. at 3–7.)  This harm is irreparable.  Second, Plaintiffs have no adequate remedy at law, because monetary damages cannot rectify the consumer confusion and loss of goodwill threatened. Century 21 Real Estate Corp., 846 F.2d at 1180 ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.").  Third, the balance of hardships weighs in Plaintiffs' favor.  Plaintiffs have long used the Knorr and Unilever Marks, and have committed substantial time, money, and effort to developing consumer recognition of these marks and building significant goodwill.  (See Compl. ¶¶ 17–18, 23, 33, 37.)  Li, on the other hand, has used the marks without authorization or payment, and an injunction would only prevent her from engaging in infringing conduct.  Fourth, a permanent injunction would advance the public interest by preventing further consumer deception or confusion due to Li's infringement of Plaintiffs' marks.  Accordingly, Plaintiffs are entitled to a permanent injunction.

The Court must next determine the appropriate scope of the injunctive relief. Federal Rule of Civil Procedure 65 requires that "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  "[A]n injunction must be narrowly tailored . . . to remedy only the specific harms shown by the plaintiff[], rather than to enjoin all possible breaches of the law." Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 1998) (internal quotations, citation omitted).

The Court concludes that the requested relief is sufficiently narrowly tailored and concretely described.  The following relief is warranted:  An injunction against Li and her employees, agents, officers, attorneys, successors, and assigns, and all persons acting in concert and participation with her, restraining and enjoining them from:

15

(1) using and/or authorizing any third party to use as a trademark, service mark, domain name, business name, trade name, symbol of origin and/or otherwise the KNORR® and UNILEVER FOOD SOLUTIONS® trademarks, KNORR SOLUTION, KNORR FOOD SOLUTION, and any name or mark incorporating KNORR and UNILEVER FOOD SOLUTIONS and/or any other counterfeit, copy, simulation, confusingly similar variation, and/or colorable imitation of Plaintiffs' KNORR® and UNILEVER FOOD SOLUTIONS® trademarks, in any manner or form, on or in connection with any business, products and/or services, and/or in the marketing, advertising and/or promotion of same;

(2) imitating, copying or making any unauthorized use in any manner or form of Plaintiffs' KNORR® and UNILEVER FOOD SOLUTIONS® trademarks and/or any copy, simulation, variation and/or imitation thereof;

(3) making and/or displaying any statement and/or representation that is likely to lead the public and/or the trade to believe that Defendant Li and/or Defendant Li's products and/or services are in any manner associated, affiliated with, approved, endorsed, licensed, sponsored, authorized and/or franchised by or are otherwise connected with Unilever;

(4) using and/or authorizing any third party to use in connection with the rendering, offering, advertising, and/or promotion of any goods, products, and/or services any false description, false representation, and/or false designation of origin, and/or any marks, names, words, symbols, devices, and/or trade dress which falsely associate such goods, products and/or services with Plaintiffs and/or tend to do so;

(5) diluting the distinctive quality of Plaintiffs' KNORR® and UNILEVER FOOD SOLUTIONS® trademarks;

(6) registering and/or applying to register as a trademark, service mark, domain name, trade name and/or other source identifier or symbol of origin KNORR or UNILEVER FOOD SOLUTIONS and/or any other name or mark incorporating

1   KNORR or FOOD SOLUTIONS whether alone or in combination with any

2   other word(s) or design(s), and/or any other mark, trade dress and/or name that

3   infringes on and/or is likely to be confused with Plaintiffs' KNORR® and

4   UNILEVER FOOD SOLUTIONS® trademarks;

5   (7) engaging in any other activity constituting unfair competition with Plaintiffs,

6   and/or constituting an infringement of Plaintiffs' KNORR® and UNILEVER

7   FOOD SOLUTIONS® trademarks, and/or Plaintiffs' rights therein; and

8   (8) aiding, assisting and/or abetting any other party in doing any act prohibited

9   by sub-paragraphs (1) through (7).

10   Pursuant to 15 U.S.C. § 1116(a), Li shall also be required "to file with the court

11   and serve on plaintiff within thirty days after the service on the defendant of such

12   injunction . . . a report in writing under oath setting forth in detail the manner and form

13   in which the defendant has complied with the injunction."  15 U.S.C. § 1116(a).

### IV.

### CONCLUSION

16   Consistent with the reasoning above, Plaintiffs' Motion for Default Judgment is

17   **GRANTED.**  Defendant Li is **ENJOINED** as set forth above.  The hearing presently

18   scheduled for Monday, April 9, is hereby **VACATED**.

20   **IT IS SO ORDERED.**

22   DATED: April 5, 2012

_____
Judge Garv Allen Feess
United States District Court

17