LAW OFFICE OF CINDY N. TRAN, APC
Cindy N. Tran (SBN 228214)
Lisa Stilson (SBN 196059)
225 S. Lake Avenue, Suite 300
Pasadena, California 91101-3009
Tel: 626.432.7208 / Fax: 626.638.0526

Attorneys for Cross-Complainant Knorr Solution, Inc., a California Corporation

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KNORR-NAEHRMITTEL AKTIENGESELLCHAFT and UNILEVER N.V.<br><br>         Plaintiffs,<br>    vs.<br><br>KNORR SOLUTION, INC., et al.<br><br>         Defendants.<br>_____<br><br>KNORR SOLUTION, INC., a California Corporation,<br>         Third Party Complainant,<br>    vs.<br><br>UNILEVER FOOD SOLUTIONS HONG KONG LIMITED, a Chinese corporation, TRIO FOODS LIMITED, a Chinese limited company, CHRIS SHIU LEUNG HO, an individual, GEORGE CHU, an individual, and ROES 1-10, inclusive<br>         Third Party Defendants. | Case No.: CV10-8155 GAF (Rzx)<br><br>**KNORR SOLUTION, INC.'S OPPOSITION TO PLAINTIFFS' AND THIRD-PARTY DEFENDANT UNILEVER HONG KONG LIMITED'S MOTION FOR ATTORNEYS' FEES**<br><br>**Date: August 27, 2012<br>Time: 9:30 A.M.<br>Courtroom: 740** |

KSI OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
KNORR SOLUTION INC.'S OPPOSITION ........................................................1

I.    STATEMENT OF THE CASE ....................................................................1

II.   ARGUMENT ................................................................................................2

    A.   Plaintiff's Motion Should Be Denied as Plaintiff Failed to Comply With Local Rule 7-9. ...............................................................................2

    B.   The Court Should Deny Plaintiffs' Motion as Plaintiffs Have Not Shown, By Clear and Convincing Evidence, That KSI Acted in Bad Faith. ....................................................................................................3

        1.   KSI did not plead Negligence and Breach of Warranty, but merely Breach of Contract in accordance with this Court's order and this was proper for Impleader because it concerns the exact Knorr Products that form the basis of this suit, creating a common nucleus of operative fact. ..............................4

        2.   Personal Jurisdiction over Unilever H.K. / Unilever F.S. exists because Unilever H.K. consented to jurisdiction and Unilever N.V. was already a party to this action. ..........................5

        3.   Negligent Misrepresentation was sufficiently pled by alleging that Unilever H.K., through its representatives, represented that the Knorr Products were genuine, not expired, and authorized for sale in the United States. .......................................6

            a.   Time, specifically September 27, 2009, was alleged. .........6

            b.   Place and method of the misrepresentation was alleged. ..................................................................................6

            c.   Specific content of the misrepresentations that the Knorr Products were genuine, not expired, and authorized was alleged. ........................................................7

            d.   Parties were Identified because all were named as codefendants. ....................................................................7

        4.   Indemnity and Contribution claims were proper because a contractual relationship existed both expressly and impliedly. .....7

        5.   Even if the complaint was flawed, California precedent holds that this is insufficient to award attorney's fees. ...........................8

        6.   KSI's decision not to prosecute the complaint cannot be

LAW OFFICE OF CINDY N. TRAN
A Professional Corporation
235 S. Lake Avenue • Pasadena, California 91101-3009

|   |   |   |
|---|---|---|
|   | | considered proof of bad faith.........................................................................9 |
|   | C. | Opposing Counsel's request for $97,490.80 is excessive for one motion. ......................................................................................................10 |
| III. | CONCLUSION ...................................................................................................11 |

**Law Offices of Cindy N. Tran**
A Professional Corporation
225 S. Lake Avenue, Suite 300 Pasadena, CA 91101-3009

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## CASES

*1800 Get Thin, LLC v. Hiltzik*, U.S. Dist. (Case No. CV11-00505) Lexis 104013 (2011) ................................................................................. 8, 9

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ..................................................... 3

*Davidson v. City of Culver City*, No. 04 Civ. 2220, 2004 U.S. Dist. LEXIS 30573 ..................................................................................................... 10

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) ........................... 6

*Fink v. Gomez,* 239 F.3d 989 (9th Cir. 2001) ............................................................. 8

*In re Keegan Mgmt. Co.,* 78 F.3d 431 (9th Cir. 1996) ............................................ 3, 4

*International Show v. Washington,* 326 US 310 (1945) ............................................ 5

*Louis Vuitton Malletier v. Dooney & Burke, Inc.*, No. 04 Civ. 5316, 2007 U.S. Dist. Lexis 31632 ................................................................................ 10

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ....................................... 3

*Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995) .............................................................................................. 3

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ................................................ 4

## STATUTES

28 U.S.C A. § 1367 ..................................................................................................... 4

U.C.C. § 2-204 ........................................................................................................... 7

## RULES

Fed. Rule Civ. Proc. 13 ............................................................................................... 5

Federal Rule of Civil Procedure 9(b) ......................................................................... 6

Local Rule 7-3 ............................................................................................................ 2

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KNORR SOLUTION INC.'S OPPOSITION

## I. STATEMENT OF THE CASE

This is a classic case of David versus Goliath. Knorr-Naehrmittel Aktiengesellchaft and Unilever N.V ("Plaintiffs") are large companies operating internationally through various subsidiaries. KSI is a small company unfortunate enough to do business with one of plaintiffs' subsidiaries and have effectively been put out of business by plaintiffs for doing business with plaintiffs' subsidiaries. Knorr-Naehrmittel Aktiengesellchaft and Unilever N.V filed this action against Knorr Solution Inc. (KSI) for trademark infringement. KSI believed that it was authorized to sell a variety of Knorr branded products ("Knorr Products") in the United States as it received genuine Knorr branded products from plaintiffs' subsidiary in Hong Kong. KSI is being made liable to plaintiffs for plaintiffs own failure to control its subsidiaries. KSI sold Knorr Products it received from plaintiffs' subsidiary. The sale of these goods is the basis of this litigation.

Chris Shiu Leung Ho (Ho) represented himself to a former executive of Unilever H.K. contacted KSI offering to sell genuine Knorr branded products through his new company Trio Foods Limited. Because of Ho's former position he represented to KSI that he could obtain Knorr Products at lower prices.

Ho and George Chu of Trio Foods, Limited, set up distribution of Knorr Products with KSI importing these products to the United States. Ho orchestrated the operation and participated in numerous phone communications and emails to create a "Strategic Alliance Agreement" between the companies.

Ho and Chu as representatives of Trio Foods, falsely represented to KSI that the Knorr Products were genuine, not expired, and authorized for sale in the United States. The Knorr branded products KSI received from Trio Foods were accompanied by a Finished Product Specification provided by Unilever H.K. When

1  the Knorr products that KSI imported could not pass FDA inspections, employees of
2  Unilever H.K. were in direct communication with KSI to resolve inspection issues.
3  It was not until plaintiffs filed the underlying suit did KSI realize that the products
4  could not be sold in the United States.  These products and the transactions are now
5  the basis of plaintiffs' lawsuit subjecting KSI to liability.
6       Accordingly, KSI filed a third-party complaint against these foreign entities to
7  hold them accountable for their wrongful actions. Unfortunately, serving foreign
8  companies was extremely difficult and costly resulting in a delay in the litigation.

## II.   ARGUMENT

### A. Plaintiff's Motion Should Be Denied as Plaintiff Failed to Comply With Local Rule 7-9.

Plaintiffs failed to comply with Local Rule 7-3, which requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." L.R. 7-3.  There was no meaningful meet and confer between counsels prior to plaintiffs filing its motion for attorneys' fees. Plaintiffs' counsel states in its notice of motion that counsel had left message to KSI's counsel and did not hear back from KSI's counsel prior to filing the motion.  The fact is plaintiffs' counsel left a message for KSI's counsel regarding the motion for attorneys' fee on the same afternoon that the motion was filed and only hours before filing the motion.  KSI's counsel was not available the afternoon of July 17, 2012 and did not review the message until the next morning on July 18, 2012.  Plaintiffs' counsel did not intend to have any meaningful discussion with KSI's counsel regarding this matter.  Plaintiffs' notice of the motion was nothing more than stating that plaintiffs would be filing a motion for attorneys' fee without any detail or thorough discussion on the basis for filing such motion or discussing any potential resolution and did not

KSI's Opposition To Plaintiffs' Motion For Attorneys' Fees                    - 2 -

give KSI any time to respond to that message.  By the time KSI's counsel reviewed the message the next morning, the motion was already filed counsel had already been served with the motion through the electronic filing system, which was shortly after 10 a.m. on July 18, 2012.  (See Declaration of Cindy Tran in Support of KSI's Opposition to Plaintiffs' Motion for Attorneys' Fees, ¶ 3).

### B. The Court Should Deny Plaintiffs' Motion as Plaintiffs Have Not Shown, By Clear and Convincing Evidence, That KSI Acted in Bad Faith.

Federal courts have inherent power to sanction attorneys and parties for "bad faith" conduct in litigation or for "willful disobedience." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). But because these inherent powers are "shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).

The high burden of clear and convincing evidence of the abusive conduct is required; a mere preponderance of the evidence is not enough. *Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995). As the *Chambers* court explained, "a court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in accessing the fees." *Chambers*, 501 U.S. at 50. Courts should first look to the rules to impose sanctions before resorting to inherent powers. *Id.*

The Ninth Circuit requires that a court make a specific finding of bad faith, or tantamount to bad faith, before it can exercise its inherent powers. *In re Keegan Mgmt. Co.,* 78 F.3d 431 (9th Cir. 1996).  This specific finding is more than just recklessness. *Id.* In *Keegan*, the district court used its inherent power to sanction the attorneys and the law firms for recklessly initiating a securities lawsuit. *Id.* Because the district court failed to make a specific finding of bad faith and there was no

KSI's Opposition To Plaintiffs' Motion For Attorneys' Fees                                                          - 3 -

support in the record, the Ninth Circuit reversed. *Id.*

The instant case is similar to *Keegan* because opposing counsel has not offered sufficient proof of bad faith. Further, the record does not support such a finding. Opposing counsel's primary proof of bad faith is flaws in the third party complaint. All of these arguments, however, are without merit:

> *1. KSI did not plead Negligence and Breach of Warranty, but merely Breach of Contract in accordance with this Court's order and this was proper for Impleader because it concerns the exact Knorr Products that form the basis of this suit, creating a common nucleus of operative fact.*

First, opposing counsel blatantly misstates the facts. In accordance with this Court's order, the operative third-party complaint does not plead causes of action for negligence or breach of warranty, but merely breach of contract. This was a proper claim for the following reasons:

Title 28 United States Code § 1367 provides that in any civil action that the district court has original jurisdiction the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action that form part of the same case or controversy. 28 U.S.C A. § 1367 (West, 2012).  The famous "common nucleus of operative fact" test is employed to determine whether the claims form part of the same case or controversy. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

Here, the breach of contract claim forms part of the same case or controversy because the Third-Party Defendants were the supplier of the Knorr Products, which are the core of this entire suit. Defendants conducted multiple transactions with KSI to import and sell these products. These Knorr Products form the only basis for trademark infringement and the only basis for the state law claims of negligence and breach of warranty. The transaction of selling these Knorr Products is the paramount issue in controversy.

Accordingly, these products form a "common nucleus of operative fact"

KSI's Opposition To Plaintiffs' Motion For Attorneys' Fees                                                                                                          - 4 -

between the causes of action and are thus proper for a third-party complaint. *Id.* Even if this claim was not proper it would not be fatal to the rest of the complaint. Further, it would be an incredible leap in logic to state that KSI's submission of such relevant and closely related claims—that are literally part of "the same transaction" —is evidence of bad faith. Fed. Rule Civ. Proc. 13 (a)(1)(A).

### 2. Personal Jurisdiction over Unilever H.K. / Unilever F.S. exists because Unilever H.K. consented to jurisdiction and Unilever N.V. was already a party to this action.

The United States Supreme Court has long held that personal jurisdiction is established when the defendant has minimal contacts with the forum state. *International Show v. Washington,* 326 US 310 (1945).   In this case, third-party defendant Unilever H.K. systematically and continuously shipped goods from Hong Kong to the United States for nearly a year beginning in September 2009 until shortly before plaintiffs filed their suit for trademark infringement. By repeatedly making its products available for sale in the United States whether through Trio Foods Limited or KSI, Unilever H.K. purposefully availed itself to the benefits of this state and therefore subjects it to the jurisdiction of this court.

In KSI's third cause of action in the Third Party Complaint ("TPC"), KSI states that Unilever H.K. had a business relationship with KSI consisting of international shipping of containers of food, business meeting, mutual electronic communications, numerous telephone communications, as well as the delivery of labels for said Knorr products to KSI.  Additionally, KSI stated in its TPC that Unilever H.K. made representations to KSI regarding the foods shipped to KSI and specifically listed examples of the information provided to KSI including correct labeling information; listed food ingredients not matching contents; effect on clearance of U.S. Customs and FDA inspections as well as other government agencies.  Between Unilever H.K.'s communications, discussions with KSI on the Knorr products and the inspection issues and potential remedies, and the actual

1  shipment of the Knorr products to the U.S. and the products availability for sale in
2  the U.S. Unilever H.K. engaged in systematic and continuous contact with this
3  forum meeting the minimum contacts requirement for personal jurisdiction.
4      Furthermore, personal jurisdiction, was already established because through
5  Unilever N.V. which was already a party to the action. Unilever N.V. initiated this
6  complaint against KSI. Unilever H.K. is a subsidiary of Unilever N.V. This fact is
7  demonstrated by both Unilever H.K. and Unilever N.V. using the same counsel in
8  this matter. Because Unilever H.K. is a subsidiary of Unilever N.V. it was already a
9  party and personal jurisdiction was not necessary.

> *3. Negligent Misrepresentation was sufficiently pled by alleging that Unilever H.K., through its representatives, represented that the Knorr Products were genuine, not expired, and authorized for sale in the United States.*

13  Negligent Misrepresentation was sufficiently pled. Federal Rule of Civil
14  Procedure 9(b)'s requires a complaint for fraud to include "time, place, and specific
15  content of the false representations as well as the identity of the parties." *Edwards v.*
16  *Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). Here, all of these factors
17  were alleged in the complaint.

19      a.  <u>Time, specifically September 27, 2009, was alleged.</u>
20      KSI's complaint clearly states that the date: "On or about September 27,
21  2009" was the beginning of the numerous communications between KSI and
22  Unilever H.K. [KSI Third Party Complaint p. 4 ¶ 22 attached hereto as Exhibit A].

24      b.  <u>Place and method of the misrepresentation was alleged.</u>
25      KSI's complaint contains the place of these misrepresentations. KSI stated
26  that the misrepresentation were communications between KSI and Unilever H.K.
27  representatives through mutual electronic communications and telephonic
28  communications. [KSI Third Party Complaint p. 9-10 ¶ 38 - 39 attached hereto as

KSI's Opposition To Plaintiffs' Motion For Attorneys' Fees      - 6 -

Exhibit A].

### c. Specific content of the misrepresentations that the Knorr Products were genuine, not expired, and authorized was alleged.

The specific content of the misrepresentations was alleged. KSI stated the contents of the misrepresentation to include information regarding shipped food items including correct labeling information and listed food ingredients. [KSI Third Party Complaint p. 9-10 ¶ 38 - 39 attached hereto as Exhibit A]

### d. Parties were Identified because all were named as codefendants.

Lastly, KSI identified all parties by naming each in the complaint. The complaint continues to give a detailed description of each party under the heading "Parties." [Exhibit A p 2-3].

In sum, KSI completely complied with all pleading requirements under Federal Rule of Civil Procedure 9(b). *See id*.

### 4. Indemnity and Contribution claims were proper because a contractual relationship existed both expressly and impliedly.

Under the U.C.C. § 2-204 (1) a contract for the sale of goods may be made in any manner sufficient to show agreement, including offer and acceptance, or conduct by both parties which recognizes the existence of a contract. U.C.C. A. § 2-204 (1) (West, 2012). The U.C.C. applies to this case because the Knorr Products at issue are considered a good. In the instant case, KSI's complaint alleges a contractual relationship in the second paragraph under the breach of contract cause of action, stating defendants: "participated in numerous e-mails and telephonic communications with KSI" for the sale of various food products. [Exhibit A, p.6 ¶ 22].

Then the complaint realleges "each and every allegation contained in the previous paragraphs" under both the indemnity cause of action and the contribution cause of action. [Exhibit A, p. 13 ¶ 61 and p.15 ¶ 68]. Thus, KSI alleged this

KSI's Opposition To Plaintiffs' Motion For Attorneys' Fees — 7 —

1 contractual relationship three times.

2 Further, KSI attached defendants emails as "Exhibit B" that show a
3 contractual relationship was formed. One email even shows a "Strategic Alliance
4 Agreement" between KSI and third-party codefendant Trio Foods. The specific
5 allegations within the complaint show that an actual contract existed between KSI
6 and Trio and a business relationship existed between KSI and Unilever H.K.
7 Moreover, Unilever H.K.'s actions, in supplying correct labeling information
8 amounted to "conduct by both parties which recognizes the existence of a contract."
9 U.C.C. A. § 204 (1) (West, 2012).

10 Therefore, the U.C.C.'s broad definition of a contract has been easily satisfied
11 by KSI's complaint, entitling KSI to a valid claim of Indemnity and Contribution
12 from defendant Unilever H.K.

### 5. *Even if the complaint was flawed, California precedent holds that this is insufficient to award attorney's fees.*

Even if the complaint was flawed, California precedent, which opposing counsel has cited, requires more to impose attorney's fees. *1800 Get Thin, LLC v. Hiltzik*, U.S. Dist. (Case No. CV11-00505) Lexis 104013 (2011). While district courts are vested with the inherent power to issue sanctions in the form of attorneys' fees, the Ninth Circuit requires a specific finding of bad faith before a court may issue these sanctions pursuant to its power. *Fink v. Gomez,* 239 F.3d 989 (9th Cir. 2001). In *Hiltzik*, attorneys' fees were sought under both the Lantham Act and the court's inherent powers after the court held that defendant's references to the plaintiff's trademarks were false and misleading, not sufficiently pled and failed to state a claim under the Lantham Act. But the court denied attorneys' fees, reasoning that "there is nothing 'exceptional' about failing to state a claim, in fact, it is a regular occurrence within the federal court system." *Id.* Even though the plaintiff's complaint was convoluted, there were five lawsuits against the defendants, and a motion to amend was submitted on minimal notice, the conduct did not rise to the

level of bad faith. *Id.*

The instant case is very similar to the *Hiltzik* case: both involve a trademark suit for attorney's fees based on a flawed complaint. The facts in *Hiltzik* even surpass the case here because KSI does not have five other complaints against the parties or file a motion to amend with minimal notice. This Court should follow the sound reasoning of *Hiltzik* because a flawed complaint should not justify an award of attorney's fees since this is "a regular occurrence within the federal court system." *Id.* Accordingly, a flawed complaint does not evidence bad faith.

Plaintiffs' counsel referenced the fact that KSI failed to defend its third party complaint against plaintiffs' motion to dismiss as bad faith for filing the third party complaint in the first place.  KSI's failure to defend the motion to dismiss does not make its third party complaint frivolous, without merit or vexatious.  KSI filed its motion for leave to file a Third Party Complaint on August 26, 2011.  Court granted KSI's motion for leave on September 30, 2011.  KSI's TPC was filed on October 12, 2011.  On November 9, 2011 KSI sent the TPC to the Hong Kong Central Authority for service on the third party defendants pursuant to the Hague Convention.  By January 2012, without hearing from the Hong Kong Central Authority, KSI retained the service of Ku John, Tam & Ho a law firm in Hong Kong to complete service on the third party defendant. On June 5, 2012, Unilever H.K. filed its motion to dismiss. Prior to Unilever H.K.'s motion to dismiss, the parties had started discussing possible settlement of the matter.  KSI is no longer in any position to fund its litigation cost and had decided to concentrate what funds it has left in defending the matter and reaching a settlement with plaintiffs.  (See Declaration of Cindy N. Tran).  KSI's failure to oppose the motion to dismiss was simply a result of its inability to fund its litigation costs and no a result of bad faith in filing its third party complaint.

> *6. KSI's decision not to prosecute the complaint cannot be considered proof of bad faith.*

KSI's Opposition To Plaintiffs' Motion For Attorneys' Fees — 9 —

1 Opposing counsel's novel description of a "tactical refusal" to prosecute may
2 sound entertaining, but offers absolutely no proof of bad faith. This last feeble
3 attempt to use hyperbole only underscores opposing counsel's complete lack of facts
4 or evidence to show bad faith, as argued above.

5 KSI diligently attempted to serve all defendants, who are foreign parties
6 existing outside of the United States. As opposing counsel admits, the issue of
7 international service under the Hague Convention is a particularly complicated
8 issue. Because international service is so complicated the litigation was delayed, not
9 because KSI intentionally did so. Furthermore, when KSI did not receive a response
10 from the Hong Kong Central Authority, KSI retained the services of a law firm in
11 Hong Kong to complete service on the third party defendants.  KSI had spent
12 considerable funds simply to complete service on the third party defendants.  Its
13 third party complaint was not filed in bad faith, KSI simply ran out of money to
14 prosecute its complaint and opted to concentrate on defending the lawsuit while
15 attempting to reach a settlement with plaintiffs.

### C. Opposing Counsel's request for $97,490.80 is excessive for one motion.

18 In the event that this court does award attorney's fees, the amount requested is
19 excessive. Opposing counsel cites *Davidson v. City of Culver City*, No. 04 Civ.
20 2220, 2004 U.S. Dist. LEXIS 30573 at 49 to justify using the lodestar figure.. This
21 case, however, is distinguishable because the reasonableness of several specific
22 charges were contested, not the hourly rate or the number of hours.

23 A much more factually similar case is *Louis Vuitton Malletier v. Dooney &
24 Burke, Inc.*, No. 04 Civ. 5316, 2007 U.S. Dist. Lexis 31632, which opposing counsel
25 also cites.  This case held that the amount of time claimed was excessive, reasoning
26 that one 19-page memorandum, two declarations, and a 13-page reply memorandum
27 did not take five attorneys 105.6 hours to complete. *Id.*
28 Here, KSI strongly believes that opposing counsel's calculation of hours is

KSI's Opposition To Plaintiffs' Motion For Attorneys' Fees                                   - 10 -

inaccurate. These hours reflect time worked on other aspects of this litigation and not on the motion to dismiss the third-party complaint. Just like in *Louis Vuitton Malletier*, KSI does not believe it took seven experienced attorneys and a paralegal nearly six weeks (220.90 hours divided by a work week of 40 hours) to complete one motion consisting of 15 pages of actual arguments.  The calculation of hours include hours for work performed as far back as August 2011 and referenced different matters, specifically Y0759-00763 and Y0759-00793 without referencing what the work performed included.  Unilever H.K.'s motion to dismiss was filed on June 5, 2012.  It is not likely that plaintiffs' counsel had been working on this motion to dismiss for nearly one year.

## III.   CONCLUSION

Attorney fees should not be granted because the high standard of clear and convincing evidence of bad faith was not met; the facts do not support any wrongdoing because every single allegation was sufficiently alleged, and the only delay in litigation was due to the complexity of serving foreign defendants. KSI's decision not to pursue the third party compliant in favor of possible settlement and concentration of what little funds available in defending the lawsuit is not bad faith. Thus no showing of bad faith was made to warrant sanctions in form of attorneys' fees.

Dated: August 6, 2012

LAW OFFICES OF CINDY N. TRAN
A Professional Corporation

By:  /s/ Cindy Tran
     Cindy N. Tran
     Attorney for Defendant/Third Party
     Plaintiff Knorr Solution, Inc.